IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JOYCE WASHINGTON, | Civil Action No. |
| Plaintiff, | |
| v. | |
| VALET LIVING, LLC, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Joyce Washington ("Plaintiff" or "Ms. Washington"), by and through undersigned counsel, and files her Complaint for Damages against Defendant Valet Living, LLC ("Defendant"), and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages for Defendant's violation of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.* ("ADA").

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12117.

3.

Defendant does business in this judicial district.  Additionally, the unlawful employment practices alleged in this Complaint were committed within this district.  In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

## PARTIES

4.

Plaintiff is a female citizen of the United States of America and is subject to the jurisdiction of this Court.

5.

Defendant is licensed to conduct business in this district.

6.

Defendant is and has been, at all times relevant to this Complaint, an employer as defined under 42 U.S.C. § 12111(5)(A), is qualified and licensed to do business in Georgia, and has conducted business within this District.

7.

Plaintiff is a female citizen of the United States of America and a resident of the State of Georgia and at all such times, Plaintiff was an "employee" of Defendant as defined under 42 U.S.C. § 12111(4).

8.

During all times relevant hereto, Defendant had employed fifteen (15) or more employees for the requisite duration under the ADA. Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

9.

Defendant may be served with process via its Registered Agent, Registered Agent Solutions, Inc., at 900 Old Roswell Lakes Parkway, Suite 310, Roswell, GA 30076.

## ADMINISTRATIVE PROCEDURES

10.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on December 8, 2020.

11.

The EEOC issued a "Notice of Right to Sue" on April 13, 2021, entitling an action to be commenced within ninety (90) days of receipt of that notice.

12.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

## **FACTUAL ALLEGATIONS**

13.

Defendant hired Ms. Washington as a Concierge on March 2, 2020.

14.

Ms. Washington has a disability and/or perceived disability.

15.

More specifically, Ms. Washington had been diagnosed with cancer, which left her immunocompromised.

16.

Ms. Washington notified Defendant of her disability, i.e. her cancer diagnosis, upon being hired.

17.

On or about August 17, 2020, Defendant promoted Ms. Washington to Lead Concierge.

18.

On or about August 26, 2020, Defendant relocated Ms. Washington to Cyan on Peachtree ("Cyan") in Buckhead as its permanent Lead Concierge.

19.

While the previous locations Ms. Washington had been appointed to were COVID safe environments, Cyan was not.

20.

For example, there was no mandate or requirement regarding wearing a mask.

21.

There was no viable signage regarding social distancing.

22.

The concierge desk did not have any type of boundary separating people.

23.

On or about September 1, 2020, Ms. Washington contacted Human Resources to request both signage and desk protection.

24.

Ms. Washington also complained that Ms. Williams-McCarley had placed her at the Cyan knowing it was unsafe due to Ms. Washington's disability.

25.

Ms. Washington obtained a letter from her medical provider on September 2, 2020, noting that she was considered high risk, and advising that she "work in an environment and office building where current CDC recommendations for wearing masks and social distancing are adhered."

26.

Ms. Washington's manager, Trazet Williams-McCarley, thereafter began to retaliate against Ms. Washington.

27.

Ms. Williams-McCarley took Ms. Washington off the schedule for a few days while she prepared signs.

28.

Ms. Williams-McCarley accused Ms. Washington of undermining her authority by going to Human Resources.

29.

Ms. Williams-McCarley attempted to use intimidation tactics towards Ms. Washington.

30.

Ms. Williams-McCarley had other Lead Concierges monitor Ms. Washington's actions.

31.

Ms. Williams-McCarley falsely accused Ms. Washington of misconduct; the disciplinary action was dropped when Ms. Williams-McCarley was unable to provide any support for her claims.

32.

On September 7, 2020, Ms. Williams-McCarley remanded Ms. Washington to sit in her car for nearly two hours.

33.

Ms. Washington was scheduled to work 7 a.m. until 3 p.m. on September 7, 2020.

34.

At approximately 2 p.m., Summer Covington, who was to relieve Ms. Washington, called to notify Ms. Washington. Another employee, Dalton, had agreed to cover her shift.

35.

Dalton confirmed with Ms. Washington that he was covering, but that he would be a little late.

36.

At approximately 3:44 p.m., Dalton sent a text to Ms. Washington stating "IV [sic] been informed by trazet [sic] that she does not want me there to avoid drama."

37.

Ms. Williams-McCarley was aware that Ms. Washington was unbale to cover the shift because she was scheduled to work at her other job that evening.

38.

Ms. Williams-McCarley did not respond to Ms. Washington's calls and text messages requesting an update as to when to expert her replacement.

39.

Ms. Washington stayed three hours past her scheduled shift waiting for Ms. Williams-McCarley to cover her.

40.

The security guard agreed to sit at the desk until Ms. Williams-McCarley arrived.

41.

Ms. Washington clocked out at 6:10 p.m. on September 7, 2020.

42.

Defendant terminated Ms. Washington's employment for violation of policy.

43.

Defendant terminated Ms. Washington in retaliation for her requests for medical accommodations of her disability.

44.

Defendant refused to engage in any additional dialogue concerning Ms. Washington's requests to protect herself (and others) while the community was continuing to deal with the COVID pandemic.

45.

Defendant failed to engage in the interactive process with Ms. Washington, even though doing so would not have been an undue hardship.

46.

Defendant terminated Plaintiff because she had a record of a disability and/or because it regarded her as disabled and/or because she engaged in protective activity and/or because she was entitled to the protections of the ADA.

47.

Employees outside of her protected class, i.e. employees who were not disabled and/or not immunocompromised, were treated differently, i.e. not terminated.

48.

Plaintiff was qualified to perform her position and had a positive performance history prior to her complaints.

49.

Defendant did not terminate Plaintiff because her requests presented any actual undue hardship, but rather due to the financial greed of the company.

## CLAIMS FOR RELIEF

## COUNT I:  DISABILITY DISCRIMINATION IN VIOLATION OF ADA

50.

Plaintiff re-alleges paragraphs 13-49 as if set forth fully herein.

51.

Plaintiff has a physical impairment which substantially limits one or more major life activities and leaves her immunocompromised.

52.

Plaintiff's pshycial impairment is a "disability" within the meaning of the ADA, as amended.

53.

Defendant was aware of Plaintiff's disability.

54.

Defendant regarded Plaintiff as having a disability such that she is a person with a disability and/or perceived disability within the meaning of the ADA, as amended.

55.

Plaintiff has a record of having a disability and/or perceived disability such that she is a person with a disability within the meaning of the ADA, as amended.

56.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

57.

Defendant terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

58.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

59.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

60.

Defendant treated other employees outside Plaintiff's protected class differently.

61.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

62.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

63.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

64.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

65.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

66.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

67.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

68.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II:  FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

69.

Plaintiff re-alleges paragraphs 13-49 as if set forth fully herein.

70.

Plaintiff has a physical impairment which substantially limits one or more major life activities and leaves her immunocompromised.

71.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

72.

Defendant was aware of Plaintiff's disability.

73.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

74.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

75.

Plaintiff requested that Defendant accommodate her disability by implementing safety protocols to protect her and other employees during the COVID-19 pandemic, or to return to her previous assigned post.

76.

Upon receiving Plaintiff's request for an accommodation, Defendant failed to engage in the interactive process with Plaintiff regarding her request for a reasonable accommodation of her disability.

77.

Defendant refused to provide Plaintiff with reasonable accommodations, even though to do so would not impose an undue hardship.

78.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

79.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

80.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her disability.

81.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

82.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

83.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

84.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

85.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT III:  RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

86.

Plaintiff re-alleges paragraphs 13-49 as if set forth fully herein.

87.

Plaintiff has a physical impairment which substantially limits one or more

major life activities and leaves her immunocompromised.

88.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

89.

Defendant was aware of Plaintiff's disability.

90.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

91.

Defendant terminated Plaintiff for requesting an accommodation for her disability and/or perceived disability.

92.

Plaintiff's request for an accommodation of her disability and/or perceived disability constitutes protected conduct under the ADA, as amended.

93.

Defendant retaliated against Plaintiff by terminating her employment on the basis of her request for an accommodation.

94.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests.

95.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

96.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

97.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

98.

As a result of Defendant's retaliatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

99.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory

damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

100.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

101.

Plaintiff thus seeks compensatory and punitive damages pursuant to 42 U.S.C. § 12111 *et seq.*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

(a)      General damages for mental and emotional suffering caused by Defendant's misconduct;

(b)      Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c)      Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d)         Reasonable attorney's fees and expenses of litigation;

(e)         Trial by jury as to all issues;

(f)         Prejudgment interest at the rate allowed by law;

(g)         Declaratory relief to the effect that Defendant has violated

            Plaintiff's statutory rights;

(h)         Injunctive relief of reinstatement, or front pay in lieu thereof,

            and prohibiting Defendant from further unlawful conduct of the

            type described herein; and

(i)         All other relief to which she may be entitled.


Respectfully submitted the 17th day of May, 2021.

                              **BARRETT & FARAHANY**

                               s/ *Adian R. Miller*
                              Adian R. Miller
                              Georgia Bar No. 794647

                              *Attorney for Joyce Washington*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
adian@justiceatwork.com